Date signed June 28, 2012



THOMAS J. CATLIOTA
U. S. BANKRUPTCY JUDGE

### IN THE UNITED STATES BANKRUPTCY COURT
### DISTRICT OF MARYLAND
### at GREENBELT

| | | | |
|---|---|---|---|
| In Re: | * | | |
| Harvey J. Korman and Susan C. Korman | * | Case No. | 09-13311-TJC |
| | * | Chapter | 7 |
| Debtors. | * | | |
| ************************************* | * | | |
| | * | | |
| EagleBank, | * | | |
| | * | Adversary | |
| Plaintiff, | * | Case No. | 12-210-TJC |
| vs. | * | | |
| | * | | |
| Roger Schlossberg, Chapter 7 Trustee, *et al*., | * | | |
| | * | | |
| Defendants. | * | | |

### <u>MEMORANDUM OF DECISION</u>

EagleBank  (the "Bank") and Roger Schlossberg, the Chapter 7 Trustee (the "Chapter 7

Trustee"), seek turnover under 11 U.S.C. § 542 of a distribution to be made to Harvey Korman

("Korman"), the chapter 7 debtor, from the John A. Korman Testamentary Trust (the "Trust").

1

They contend that the Trust terminated prepetition and therefore the distribution is property of the estate. Korman and the trustees of the Trust (the "Trustees") contend that the interpretation of the Trust as advocated by the Bank and Chapter 7 Trustee is wrong and not consistent with the intent or effect of a 1991 court-approved modification of the Trust which, they contend, extended the term of the Trust. Korman therefore opposes the turnover, contending that the distribution is protected under the spendthrift provision in the Trust.

Presently before the Court is a ruling on the merits after completion of the hearing on preliminary injunction. Argument was heard on June 11, 2012. For the reasons set forth herein, the Court agrees with Korman and the Trustees, and will dissolve the order granting preliminary injunction (Docket No. 29) and dismiss the complaint.

*Procedural History*

The Bank filed a Complaint and Emergency Ex Parte Motion for a Temporary Restraining Order and Preliminary Injunction on March 22, 2012, pursuant to Rule 65 of the Federal Rules of Civil Procedure and Federal Bankruptcy Rule 7065, against Korman and others. On March 23, 2012, the Court conducted an *ex parte* hearing on the request for a temporary restraining order and issued the temporary restraining order that day. The Court scheduled a further hearing on the motion for March 30, 2012, its first available date.

On March 30, 2012, the Court conducted a full evidentiary hearing on the motion, at which Korman and the Trustees appeared and participated through counsel and by testimony. Upon the conclusion of the March 30 hearing, and after it proved difficult to set a schedule for briefing and a further hearing, the parties agreed to the entry of a preliminary injunction to allow the orderly resolution of the matter. The parties have now fully briefed the issues and closing argument has been heard. Pursuant to Rule 65(a)(2) of the Federal Rules of Civil Procedure, the Court rules on the merits of the claims.

*Findings of Fact*

The parties have stipulated to the majority of the facts, although their stipulations are supplemented by the Court's findings.

On February 27, 2009, Korman commenced his bankruptcy case by filing a petition for relief under chapter 11. Docket No. 34 ¶ 1; Docket No. 40 ¶ 1. On October 26, 2009, the Court converted this proceeding to Chapter 7. Docket No. 34 ¶ 2; Docket No. 40 ¶ 2. The Bank is a creditor of Korman and has filed a proof of claim in the amount of $2,925,941.39. Docket No. 34 ¶ 5; Docket No. 40 ¶ 5.

The Trust is a trust established under the terms of the Last Will and Testament of John A. Korman dated July 13, 1949 ("Will"). Docket No. 34 ¶ 6; Docket No. 40 ¶ 6. The Will creates the Trust in Item V:

> All of the rest, residue and remainder of my estate and property, of whatsoever character, wheresoever situated and whensoever acquired, and all estate and property to or in which I shall have any right, title claim or interest at the time of my death, I give, bequeath and devise, in absolute estate and in fee simple, unto my son, Stanley W. Korman, of the City of Washington, District of Columbia, my son-in-law, Daniel Sepler of Miami Beach, Florida, and Hamilton National Bank, a corporation organized under the National Banking Laws of the U.S. and doing business in the District of Columbia in and upon the following trusts.

Pl.'s Ex. 1, at 1.

According to the terms of the Will, the Trust was established for various specific beneficiaries: primarily, John A. Korman's wife, Yetta, and his children, Stanley Korman and Helen Sepler. Pl.'s Ex. 1, at 4. Docket No. 34 ¶ 9; Docket No. 40 ¶ 9. At the time of the filing of the petition, Korman and five other grandchildren of John A. Korman were the

3

beneficiaries under the Trust.[1]  Docket No. 34 ¶ 8.  The Will contains the following provision,

which the parties agree is a valid spendthrift provision applicable to the Trust:

> No part of the income and principal of my residuary trust estate hereby created shall be alienable by any beneficiary entitled thereto, either by assignment, legal process or any other method; nor shall the same be subject to the claims of any creditor or creditors of the beneficiaries, or any of them, by any process whatsoever; nor shall the interest of any female beneficiary hereunder be subject to the control of the husband of such beneficiary, or the control of any other person.

Pl.'s Ex. 1, at 1. Docket No. 34 ¶ 13; Docket No. 40 ¶ 13.

> Item V of the Will contains the termination provision.  It provides that the Trust:

> …shall fully cease and determine upon the death of the last survivor of my said wife [Yetta], son [Stanley] and daughter [Helen], or in the event of the remarriage of my said wife upon the death of the survivor of my said two children, as the case may be, whereupon said Trustees, or the survivor of them, shall forthwith set over, deliver, assign and convey, in absolute estate and in fee simple, my entire residuary estate then held in trust unto my issue, per stirpes.

Pl.'s Ex 1, Item V, at 4. Docket No. 34 ¶ 10; Docket No. 40 ¶ 10.  The parties stipulate that

the Trust did not specifically provide that its duration could be extended, although the

Trustees contend the lack of such a provision is not pertinent to the issues raised herein.  *Id.*;

Docket No. 40 ¶ 8.

John A. Korman passed away in 1952.  *Id.*;  Pl.'s Ex. 1, 2 & 7.   Yetta Korman died at

age 89 in 1966; Stanley Korman died at the age of 72 in November of 1983; and Helen Sepler

died at the age of 88 on June 19, 2006.  Docket No. 34 ¶ 14-16; Docket No. 40 ¶ 14-16.

According to the Land Records of the District of Columbia, John A. Korman and Yetta

Korman were the owners of record of an Indenture of Lease dated June 15, 1949 (the "Ground

Lease").  The Ground Lease has a 99-year term from John A. Korman and Yetta Korman,

---

[1] The beneficiaries other than Korman are Everett and Richard Korman and Harvey, Joan and Penny Sepler.

husband and wife, to Idaho Terrace, Inc.   The Ground Lease was transferred into the Trust at or about the time the Trust came into existence.  From at least 1990 until it was recently sold by the Trustees, the Ground Lease, and any income or profit it generated, was the sole significant asset of the Trust.

Korman, the Trustees and the other beneficiaries of the Trust prepared documents intended, among other things, to amend the Trust by extending its term.  Specifically, on October 9, 1990, Korman, and the other beneficiaries of the Trust prepared the Stipulated Agreement to Amend the John A. Korman Testamentary Trust of February 18, 1952 ("First Stipulated Agreement").  Pl.'s Ex. 12. Docket No. 34 ¶ 21; Docket No. 40 ¶ 21.   The First Stipulated Agreement appointed the current Trustees[2] and provided for the withdrawal of Security Trust Company N.A. as a trustee.  It also included Paragraphs 4(a) and (b), subsequently modified, which the Trustees and Korman contend extended the term of the Trust.  Specifically, Paragraphs 4(a) and (b) provided:

> (a) The sum of $5,250.00 is to be paid to Helen Sepler semi-annually during her lifetime, and upon her demise, this obligation shall terminate, and the net income thereafter shall be divided and paid in six equal installments to the grandchildren above-named and upon their demise, to their heirs or legatees as each such beneficiary shall determine, and in the absence of a determination, to their heirs at law.  All other income payments as provided for shall otherwise terminate, and each party as signatory of the Agreement To Amend the John A. Korman Testamentary Trust of February 19, 1952, dated October 9, 1990, ("Agreement") relinquishes his or her claim, except as provided by the Agreement.

> (b) The Trustees shall accumulate and distribute in six equal parts to the named grandchildren, all of the assets of the Trust with the exception of the real estate known as the Idaho Terrace Apartments which shall remain in the trust for the benefit of the above-named grandchildren, and a sum determined by the Trustees as being sufficient to fund payments to Helen Sepler and the expense of operating the Trust Estate.

---

[2] The Trustees are Richard Sepler, Harvey Sepler and Everett Korman.  Richard Sepler is not a beneficiary of the Trust.

First Stipulated Agreement at ¶¶ 4(a) & (b).  The First Stipulated Agreement did not identify an express termination date of the amended Trust.  Pl.'s Ex. 21. Docket No. 34 ¶ 22; Docket No. 40 ¶ 22.

On or about December 11, 1990, Security Trust Company, as the then sole remaining trustee, filed a complaint in the Superior Court of the District of Columbia, Probate Division, (the "Probate Proceeding") seeking approval of the appointment of the Trustees, the withdrawal of Security Trust Company as a trustee, and the adoption of Paragraphs 4(a) and (b). Pl.'s Ex. 21.  Korman and the other Defendants in the Probate Proceeding answered the Complaint and consented to the requested relief.  Pl.'s Ex. 22.  Docket No. 34 ¶ 23; Docket No. 40 ¶ 23.

On March 15, 1991, the Register of Wills filed a proposed Order Denying Motion for Judgment on the Pleadings in the Probate Proceeding, stating:

> [n]otwithstanding the consents of all defendants in the above-mentioned written agreement [First Stipulated Agreement], this amendment would place the trust in violation of the Rule Against Perpetuities which would render the trust invalid.  The common-law rule as enunciated in D.C. Code 45-302 states that no interest is valid unless it must vest, if at all, not later than twenty-one (21) years after some life in being at the time of the creation of the interest.  It would appear that the intent of this amendment is to extend the trust indefinitely.  This would constitute a restraint on alienation.
>
> * * * * * * * * * *
>
> Additionally, this amendment is contrary to the express provision of Item V of decedent's will.  Here is stated that the "trust herein created shall fully cease and determine upon the death of the last survivor of my said wife, son and daughter..."

Pl.'s Ex. 23.

The Superior Court entered an Order Scheduling Hearing in the Probate Proceeding on March 24, 1991.  Pl.'s Ex. 24.  Docket No. 34 ¶ 25; Docket No. 40 ¶ 25.  On April 23, 1991, the Trustees prepared and executed the Amended Stipulated Agreement to Amend the John A. Korman testamentary Trust of February 18, 1991 ("Second Stipulated Agreement"), which provides, as relevant here:

> 4. The Testamentary Trust, Item V, is hereby amended . . . as follows:
>
> a. The sum of $5,250.00 is to be paid to Helen Sepler semi-annually during her lifetime, and, upon her demise, this obligation shall terminate, and the net income thereafter shall be divided and paid in six equal payments to the grandchildren above-named.  All other income payments as provided for shall otherwise terminate, and each party as signatory to this Agreement relinquishes his or her claim, excepting as herein provided.
>
> b. The Trustees shall accumulate and distribute in six equal parts all of the assets of the Trust to the named grandchildren above set forth with the exception of the real estate known as the Idaho Terrace Apartments which shall remain in the Trust for the benefit of the above-named grandchildren and a sum determined by the Trustee as being sufficient to fund the payments to Helen Sepler and the expenses of operating the Trust Estate.

Pl.'s Ex. 13.

That same day, Lawrence M. Mann ("Mann"), counsel for the Trustees, prepared a Supplemental Memorandum in Support of Motion for Judgment on the Pleadings, which was filed with the court on April 24, 1991.  Pl.'s Ex. 25.  This memorandum provided:

> On April 12, 1991, this court conducted a hearing on Plaintiff's Motion for Judgment on the Pleadings. At that hearing, the court raised a question conce3rning the application of the rule against perpetuities.  After review of the authorities cited by the court, plaintiff concedes that the original amendment may violate such rule.  Therefore, all of the interested parties have now executed an Amended Agreement to eliminate any potential legal impediment.  (Exhibit A attached hereto).  In particular, Paragraph 4.a of the [First Stipulated Agreement] was amended by deleting the following:

> And upon their demise, to the heirs or legatees as each such beneficiary shall determine, and in the absence of a determination, to their heirs at law.

Plaintiff submits that this amendment eliminates any potential violation of the rule against perpetuities.

Pl.'s Ex. 25.

By letter dated April 24, 1991 (the "Mann Letter"), Mann wrote to the Superior Court apparently following a hearing on the same date and stated that the Second Stipulation did not change the date of termination of the Trust under the Will. Pl.'s Ex. 26. Docket No. 34 ¶ 27; Docket No. 40 ¶ 27. The Mann Letter stated:

> Dear Judge Sullivan:
>
> At the hearing today in the above-referenced matter, you raised a question as to the termination of the trust. I have again reviewed the Last Will and Testament of John A. Korman, and Item V. on page four of the will provides, inter alia:
>
>> The Trust herein created shall fully cease and determine upon death of the last survivor of my said wife, son and daughter . . . where-upon said Trustees, or the survivor of them, shall forthwith set over, deliver, assign and convey, in absolute estate and in fee simple, my entire residuary estate then held in trust upon my issue per stirpes.
>
> The proposed amendment to the trust did not change the provision in the will. Therefore I respectfully submit that the rule against perpetuities would not be violated if the court approved the Amended Agreement dated April 23, 1991.

Pl.'s Ex. 26.

On April 24, 1991, the Office of the Register of Wills filed a handwritten Slip in the Probate Proceeding, which states:

> The Amended Agreement does not appear to resolve what is perceived to be a violation of the Rule Against Perpetuities. It vest [sic] and the trust will terminate in that the Idaho Terrace property will continue to serve as the corpus and fund the income payments with no fixed termination.

Pl.'s Ex. 27. Docket No. 34 ¶ 28; Docket No. 40 ¶ 28.

On May 3, 1991, the Register of Wills filed a Slip to Judge Sullivan in the Probate Proceeding stating, among other things, that the proposed Trust amendment is "ambiguous and inconsistent with the termination language included in the original trust provisions." Pl.'s Ex. 28. Docket No. 34 ¶ 29; Docket No. 40 ¶ 29.  It also stated:

> Essentially, §4(a) of the proposed trust amendment can be read to entitle the six grandchildren to receive the income payments of Helen Sepler upon her death, thus extending the trust beyond the life of Helen Sepler upon her death, thus extending the trust beyond the life of Helen Sepler in direct contradiction to the terms of the trust and in violation of the Rule Against Perpetuities.

Pl.'s Ex. 28.  After noting multiple times that the Trustees and the beneficiaries were filing documents that, if granted, would violate the Rule Against Perpetuities, the Register of Wills handwrote "I do not believe we should be further involved in this matter."  Pl.'s Ex. 28.  Docket No. 34 ¶ 30; Docket No. 40 ¶ 30.

On July 10, 1991, the Superior Court entered an order  (the "1991 Order"), amending Item V of the Trust as follows:

> (a)  The sum of $5,250.00 is to be paid to Helen Sepler semi-annually during her lifetime, and, upon her demise, this obligation shall terminate, and the net income thereafter shall be divided and pain in six equal installments to the grandchildren above-named.  All other income payments as provided for shall otherwise terminate, and each party as signatory to the Agreement To Amend the John A. Korman Testamentary Trust of February 19, 1952, dated October 9, 1990, ("Agreement") relinquishes his or her claim, except as provided by the Agreement.

> (b) The Trustee shall accumulate and distribute in six equal parts to the named grandchildren, all of the assets of the Trust with the exception of the real estate known as the [Ground Lease] which shall remain in the trust for the benefit of the above-named grandchildren, and a sum determined by the Trustees as being sufficient to fund payments to Helen Sepler and the expense of operating the Trust Estate.

Pl.'s Ex. 15.  Docket No. 34 ¶ 31; Docket No. 40 ¶ 31.

On July 10, 2004, Korman, the Trustees and the other beneficiaries executed the Stipulated Agreement to Amend the John A. Korman Testamentary Trust of February 18, 1952

("Last Stipulated Agreement").  Pl.'s Ex. 14. Docket No. 34 ¶ 32; Docket No. 40 ¶ 32.  After

execution of the Last Stipulated Agreement, Korman, the Trustees and the other beneficiaries

did not seek an Order of the Superior Court approving the terms of the Last Stipulated

Agreement.  Docket No. 34 ¶ 33; Docket No. 40 ¶ 33.

The Trustees sold the Ground Lease, the last remaining asset of the Trust, on March 23,

2012.  The underwriters insuring the title to the Ground Lease required that all the

beneficiaries individually execute a deed.  The underwriter concluded that the First Stipulated

Agreement and the 1991 Order did

> not clearly extend the Trust after the death of Helen. Since the middle
> paragraph on page 4 of the [Will] states that the Trust created shall cease
> upon the death of the last survivor of the wife, son and daughter, my
> underwriters are requiring not only the Trustees, but also the beneficiaries
> under the Trust to join in the execution of the Deed.

Pl.'s Ex. 17 & 18. Docket No. 34 ¶ 35; Docket No. 40 ¶ 35.  Accordingly, all of the

beneficiaries quitclaimed "any and all" interest they had in the Ground Lease.  Pl.'s Ex. 19.

Korman's share of the proceeds of the sale of the Ground Lease was $551,208.33.

Docket No. 29; Docket No. 34 ¶ 36; Docket No. 40 ¶ 36.   The Bank learned of Korman's

interest in the Trust, filed the complaint in this adversary proceeding and sought injunctive relief.

Pursuant to the preliminary injunction issued by this Court upon consent, the Trustees are

holding the net proceeds of Korman's interest in the Trust subject to further court order.  Docket

No. 29; Docket No. 34 ¶ 40; Docket No. 40 ¶ 40.

*Conclusions of Law*

The Chapter 7 Trustee and the Bank seek an order pursuant to § 542(a) of the Bankruptcy

Code requiring Korman to turnover the distribution that the Trust is holding under the

preliminary injunction order.[3]  The ultimate issue before the Court is whether Korman's interest in the Trust, or at least his right to the distribution, is an asset of the estate.  That issue, in turn, turns on the enforceability of the spendthrift provision in Item V of the Will.  The parties agree that if the spendthrift provision in Item V is enforceable under non-bankruptcy law, Korman's interest in the Trust, and his right to receive the distribution, is not property of the estate.[4]  They also agree that the question of whether the spendthrift provision in Item V is enforceable turns on whether the term of the Trust was extended, either in the 1991 Order or otherwise.

Specifically, Item V provided that the Trust was to terminate upon the death of the latter of Yetta Korman, Stanley Korman or Helen Sepler.  Helen Sepler, who died on June 19, 2006, was the last to die.  The Bank and the Chapter 7 Trustee contend that the Trust terminated by its terms on that date, which preceded the petition date.  They contend, therefore, that the spendthrift provision no longer protects the distribution to Korman upon termination pursuant to

---

[3] Section 542 provides in pertinent part:

> Except as provided in subsection (c) or (d) of this section, an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.

11 U.S.C. § 542(a).

[4] Section 541(a)(1) provides that property of the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case."  11 U.S.C. § 541(a)(1).  Section 541(a)(6) includes in the definition "[p]roceeds, product, offspring, rents, or profits of or from property of the estate, except such as are earnings from services performed by an individual debtor after the commencement of the case." *Id.* at § 541(a)(6).  However, § 541(c)(2) of the Code provides that "[a] restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under nonbankruptcy law is enforceable in a case under this title."  *Id.* at § 541(c)(2).  The parties agree that this provision recognizes the enforceability of spendthrift provisions where the debtor is a beneficiary, to the extent such a provision is enforceable under nonbankruptcy law. *In re Salahi*, 2012 WL 1438213 (Bankr. E.D. Va. 2012) citing *Patterson v. Shumate*, 504 U.S. 753, 758 (1992) ("The natural reading of the provision entitles a debtor to exclude from property of the estate any interest in a plan or trust that contains a transfer restriction enforceable under any relevant nonbankruptcy law"); *Levin v. Wachovia Bank,* 436 Fed. Appx. 175, 179 (4th Cir. 2011) (indicating that § 541(c)(2) "excludes from the property of the bankruptcy estate interests in trust that are protected under a spendthrift clause that is enforceable under applicable state law").

D.C. Code § 19-1305.06 (2012)[5] and the distribution is property of the estate and subject to turnover under 11 U.S.C. § 542. The Trustees and Korman contend that the Trustees and all beneficiaries agreed to continue the Trust past the death of Helen Sepler through a modification that was approved in the 1991 Order. Korman contends, therefore, that the spendthrift provision remains in place. Thus the central question is whether the term of the Trust was extended in the 1991 Order or otherwise.

The general rule in construing a trust instrument or a will is that the testator's intent is the guiding principle. *Knupp v. District of Columbia*, 578 A.2d 702, 704 (D.C. 1990); *In re Durosko Marital Trust*, 862 A.2d 914, 921 (D.C. 2004). In determining a testator's intent the language of the entire instrument must be considered. *Knupp*, 578 A.2d at 704. If the intent is clear from the language of the instrument and there is no ambiguity, the intention must be determined from the instrument's four corners. *Id.* However, if the language is ambiguous, a court may examine extrinsic evidence in order to understand the instrument. *Id.*

Extrinsic facts or parole evidence may be used to decipher the intent of a trust when certain conditions are present. *Id.* First, there must be an ambiguity in the instrument. "Where there is ambiguity in the language of the will, then . . . the interpreter may put himself in the place of the testator at the time he made the will and use the circumstances surrounding testator to assist in arriving at the real intent." *Evans v. Ockershausen*, 100 F.2d 695, 704 (D.C. Cir. 1938) (*quoting Blake v. Hawkins*, 98 U.S. 315, 324 (1878)). As one treatise states:

> evidence of surrounding circumstances is admissible to enable the court to understand the meaning of the words which the testator has used in his

---

[5] D.C. Code § 19-1305.06 provides:
> Whether or not a trust contains a spendthrift provision, a creditor or assignee of a beneficiary may reach a mandatory distribution of income or principal, including a distribution upon termination of the trust, if the trustee has not made the distribution to the beneficiary within a reasonable time after the designated distribution date.

D.C. Code § 19-1305.06 (2012).

> will, it is not admissible to add to the will provisions which cannot fairly
> be inferred from the language which is used therein, or to take from the
> will provisions which are clearly expressed therein.

4 BOWE-PARKER: PAGE ON WILLS, § 32.2 at 237 (*citing Brown v. Wells*, 45 App. D.C. 428

(1916), *Atkins v. Best*¸ 27 App. D.C. 148 (1906)).

Second, when an ambiguity exists regarding the testator's intent, extrinsic evidence can

be allowed to "clear up the ambiguity." *Knupp*, 578 A.2d at 704-05.  However, it can be utilized

"only for the purpose of interpreting something actually written in the will and never to add

provisions to the will."  *Id.* at 705.  "[N]o matter how clearly a testator's wish to make a

particular disposition may appear from sources outside the will, a court cannot give it effect

unless the words written into the will effect that disposition or are *reasonably susceptible* to the

interpretation that they do."  *In re Estate of Kerr*, 433 F.2d 479, 490 (D.C. Cir. 1970) (emphasis

added).  With these standards in mind, the Court will turn to the evidence.

*The 1991 Order.*

In the 1991 Order, Judge Solomon of the Superior Court approved the following

amendment of the Trust:

> (a)  The sum of $5,250.00 is to be paid to Helen Sepler semi-annually during her
> lifetime, and, upon her demise, this obligation shall terminate, and the net income
> thereafter shall be divided and pain in six equal installments to the grandchildren
> above-named.   All other income payments as provided for shall otherwise
> terminate, and each party as signatory to the Agreement To Amend the John A.
> Korman Testamentary Trust of February 19, 1952, dated October 9, 1990,
> ("Agreement") relinquishes his or her claim, except as provided by the
> Agreement.
>
> (b) The Trustee shall accumulate and distribute in six equal parts to the named
> grandchildren, all of the assets of the Trust with the exception of the real estate
> known as the [Ground Lease] which shall remain in the trust for the benefit of the
> above-named grandchildren, and a sum determined by the Trustees as being
> sufficient to fund payments to Helen Sepler and the expense of operating the
> Trust Estate.

Def.'s Ex. 1; The 1991 Order.

The parties dispute the meaning of paragraph (b). The Bank and the Chapter 7 Trustee contend that it did not modify the termination provision in Item V of the Will – and point to the Mann Letter in support of that reading. The Trustees and Korman contend, albeit for different reasons, that paragraph (b) extended the term of the Trust to continue after the death of Helen Sepler. The Trustees contend paragraph (b) is unambiguous,[6] while Korman contends the provision is ambiguous – and points to the unwavering testimony of the Trustees and Korman that the provision was intended to extend the term of the Trust.

The Court first concludes that paragraph (b), standing alone, is ambiguous. The phrase "with the exception of the real estate known as the [Ground Lease], which shall remain in the trust for the benefit of the above-named grandchildren. . ." is capable of two meanings. It can mean the Ground Lease "shall remain in the trust" *until the death of Helen Sepler,* which would be consistent with the original termination date in Item V. Or it can mean the Ground Lease "shall remain in the trust" *after the death of Helen Sepler,* which would extend the original termination date.

However, in "determining the settlor's intent, consideration must be given to the language of the instrument as a whole, rather than to isolated passages." *Durosko*, 862 A.2d at 921 (*citing Albright v. United States*, 308 F.2d 739, 743 (5th Cir. 1962)). As this principle applies here, both paragraphs must be considered together to determine the intent of the beneficiaries and Trustees who executed the modification. The Court concludes that when paragraph (b) is read in conjunction with paragraph (a), the modification unambiguously extended the term of the Trust past the death of Helen Sepler.

---

[6] The Trustees' position on the ambiguity of paragraph (b), as well as on certain stipulations between the parties, has changed with new counsel. Because of the Court's ruling, it need not address the significance, if any, of the change in position.

Paragraph (a) provides, in pertinent part: "The sum of $5,250.00 is to be paid to Helen Sepler semi-annually during her lifetime, and, upon her demise, this obligation shall terminate, and the net income thereafter shall be divided and paid in six equal installments to the grandchildren above named.... " 1991 Order at 1.  Two phrases in this provision plainly evidence an intention to continue the Trust beyond Helen Sepler's death.  At the time of the 1991 Order, Helen Sepler was the last remaining beneficiary upon whose death the Trust would terminate and Item V was clear that the Trust would terminate upon her death.  Therefore the phrase "upon [Helen's Sepler's] demise, this obligation shall terminate" would be unnecessary and superfluous if the termination date in Item V was not being amended.  The quoted phrase would only have meaning if the life of the Trust was being continued past the death of Helen Sepler to make it clear that the obligation would not be due to her issue.  A similar rationale applies to the phrase "upon her demise . . . all net income thereafter shall be divided and paid in six equal installments to the grandchildren named above."  A provision to pay net income to the beneficiaries upon Helen Sepler's death would only be necessary if the termination date was being extended, because otherwise the Trust would terminate and the entire corpus, including any accumulated net income, would be distributable to the beneficiaries.  Similarly, the use of the phrase "equal installments" evidences an intention that the obligation to distribute net income was to continue over a period of time, and not just in the form of a corpus distribution upon termination.[7]  Therefore, since paragraph (a) makes it clear that the termination date in the Trust is being extended past the death of Helen Sepler, the only logical reading of the paragraph (b) provision that the Idaho Terrace Apartments "shall remain in the trust" is that it shall remain in

---

[7] "Installment" is defined as "one of several parts (as of a publication) presented at intervals."  *Merriam-Webster's Collegiate Dictionary*  648 (11th ed. 2005).

the Trust after the death of Helen Sepler in order to fund the payments of net income to the beneficiaries required by paragraph (a).

Alternatively, the Court would conclude that the 1991 Order extended the term of the Trust even if it accepted Korman's contention that the provision is ambiguous and looked at parole evidence.  At the time of the Trust amendment that was approved by the 1991 Order, the Trust had been in existence since 1952.  The two individual trustees had died.  The lone remaining trustee was a financial institution.  The Trust lacked leadership.  Several beneficiaries got together and led the adoption of the modification, which included the appointment of the Trustee and the withdrawal of the Security Trust Company as a trustee.

All of the beneficiaries and the then newly appointed trustees (the current Trustees) understood it would be unworkable and disadvantageous to distribute out to each beneficiary a 1/6th undivided share in the Ground Lease upon Helen Sepler's death.  They agreed that the better, indeed, only practical approach would be for the Trust to continue in existence and retain the Ground Lease until an opportune time arose to sell it.  They all understood that the intent and effect of the Trust amendment that was adopted by the 1991 Order was that the Trust would be continued after Helen Sepler died.  They agreed that the continuation of the Trust was in the best interest of all beneficiaries.  No beneficiary asked for a distribution of the Trust corpus after Helen Sepler died.  Thus, the testimony of the Trustees and Korman established that the intent of the Trust amendment that was approved by the 1991 Order was that the Trust would be continued after Helen Sepler died.

*The New Termination Date and the Mann Letter.*

The Bank and Chapter 7 Trustee point to two facts that they contend must lead to the conclusion that the 1991 Order did not extend the termination date of the Trust.  The first is that

the Trustees and Korman all had different understandings on what was the new termination date of the Trust. They variously believed that the Trust terminated either: (i) when the Trust ceased to be administered; (ii) in 2048 (when the Ground Lease expired); (iii) upon the last life in being plus 21 years from those individuals identified in the Last Stipulated Agreement; and (iv) when the Trust corpus was distributed. *See* Docket No. 34 ¶ 38; Docket No. 40 ¶ 38.

This testimony must be considered in the context in which it was given. The Trustees' and Korman's testimony established that the Trustees and all beneficiaries agreed that they did not want the Trust to have to distribute out a 1/6[th] interest in the Ground Lease to each beneficiary, nor did they want the Trust to have to sell it at an inopportune time. They understood that, when market or other conditions made it appropriate to sell the Ground Lease, the Trustees would do so and the Trust would be terminated, undoubtedly with the agreement of all of the beneficiaries. That exact date was not known. As a practical matter, the life of the Trust was tied to an orderly and economically beneficial resolution of the Ground Lease. Thus, the Trustees and Korman did not share a common understanding of the outside date on which the Trust, as a matter of law, would have to be legally terminated because none of them had an expectation that the legal termination date would ever become operative. And their expectation was fitting; the Ground Lease was sold within six years of Helen Sepler's death and with the agreement of all beneficiaries. The Court concludes that Korman's and the Trustees' differing understandings of the revised termination date does not defeat the conclusion that the Trust was continued after the death of Helen Sepler.[8]

---

[8] As discussed further below, evidence before the Superior Court establishes that the Superior Court likely concluded that the amendment approved in the 1991 Order did not violate the Rule Against Perpetuities, and so the lack of a common understanding of the new termination date was not a legal impediment to the conclusion that the termination date was extended in the 1991 Order.

The Bank and the Chapter 7 Trustee also point to the Mann Letter to support their contention that the 1991 Order did not alter the termination date of the Trust. The Mann Letter states

> The proposed amendment to the trust did not change the [termination] provision in the will. Therefore I respectfully submit that the rule against perpetuities would not be violated if the court approved the Amended Agreement dated April 23, 1991.

Pl.'s Ex. 26. As Korman concedes, the Mann Letter is inconsistent with the position of the Trustees here. Nevertheless, for several reasons, the Court concludes that the Mann Letter does not alter the Court's conclusions reached above.

First, the facts and circumstances surrounding the Superior Court's entry of the 1991 Order are not sufficiently known for the Court to conclude that the language of the Mann Letter should override the substantial credible evidence that the termination date was extended. The Mann Letter was submitted to the Superior Court in April 1991. The 1991 Order, which is merely three paragraphs in length and does not contain any reasoning, was entered three months later. The weight which the Superior Court gave to the Mann Letter during that time, if any, is sheer speculation.

Moreover, it is apparent that around the time the Mann Letter was written, the Superior Court and the Register of the Wills had significant concerns that the proposed Trust amendment violated the Rule Against Perpetuities. According to the order proposed by the Register of Wills in March, 1991, the First Stipulated Agreement appeared "to extend the trust indefinitely." Pl.'s Ex. 23. This presented two issues to the Register of Wills: the amendment appeared "to extend the trust" contrary to Item V and it did so "indefinitely" in violation of the Rule Against Perpetuities. *See* Pl.'s Ex. 23. Leaving aside for the moment the concern over the Rule Against Perpetuities, the language in the First Stipulated Agreement that appeared "to extend the trust"

did not change in the 1991 Order, reinforcing the view that the 1991 Order did, in fact, extend the termination date.   Thus to the extent it can be said that the proposed order reflects the view of the Register of Wills, that view expressly recognized that the language in the First Stipulated Agreement, which remained in the 1991 Order, had the effect of extending the termination date.

With respect to the Rule Against Perpetuities, to be sure, the Register of Wills, and apparently the Superior Court, were concerned that the First Stipulated Agreement extended the Trust indefinitely in violation of the Rule.   But the Trustees submitted a memorandum to the Superior Court dated April 23, 1991, which expressly stated:

> In particular, Paragraph 4.a of the [First Stipulated Agreement] was amended by deleting the following:
>
> > And upon their demise, to the heirs or legatees as each such beneficiary shall determine, and in the absence of a determination, to their heirs at law.
>
> Plaintiff submits that this amendment eliminates any potential violation of the rule against perpetuities.

Pl.'s Ex 25.  As the Trustees argue persuasively in their supplemental brief, the deletion of this above phrase eliminated the *per stripes* distribution scheme for the beneficiaries. The class of beneficiaries was closed and limited to the "above-named grandchildren." Therefore, the amendment could not run afoul of the Rule Against Perpetuities.

Subsequent to the submission of the Mann Letter, the Register of Wills submitted another memorandum to the Superior Court stating that the Second Stipulated Agreement continued to extend the Trust beyond the death of Helen Sepler and continued to violate the Rule Against Perpetuities. Pl.'s Ex. 28.

Thus the record before the Superior Court at the time it entered the 1991 Order was (1) the Trust apparently informed the Superior Court that the amendment *did not* violate the Rule

Against Perpetuities (Pl.'s Ex. 25) and *did not* extend the term of the Trust (Pl.'s Ex. 26 – the Mann Letter); and (2) the Register of Wills apparently informed the Superior Court that the amendment *did* violate the Rule Against Perpetuities and *did* extend the term of the Trust. Pl.'s Ex. 23 & 28.  If nothing else, the foregoing highlights the difficulty in deciphering an incomplete record and extrinsic facts in determining the intent of a document.  On balance, the Court is left with the firm conviction that, in the 1991 Order, the Superior Court approved the amendment that *did* extend the term of the Trust (as stated by the Register of Wills) but *did not* violate the Rule Against Perpetuities (as stated by the Trust).

Finally, Mann has submitted an affidavit in this proceeding that states that: [9]

> [t]he intent of the parties with regard to the language in paragraph 4b of the Stipulated Agreements, and paragraph 2b of the Court Order dated July 10, 1991 was for the real property known as the Idaho Terrace Apartments to continue to be held in trust after the death of Helen A. Sepler, the surviving child of John A. Korman, for the benefit of the named grandchildren of John A. Korman and pursuant to the terms of The John A. Korman Testamentary Trust of February 18, 1952, as amended…

Mann Aff. ¶ 5, Docket No. 10.  Thus, notwithstanding what he may have said in the Mann Letter, Mann, under oath, supports the Court's conclusion reached here on the intent of the amendment.

*Material Purpose*.

The Bank and the Chapter 7 Trustee argue that the continuation of the Trust after the death of Helen Sepler is inconsistent with a material purpose of the Trust and therefore the 1991 Order could not have extended the term of the Trust.  They rely on D.C. Code § 19-1304.11(b), which provides that a trust may be modified upon consent of all of the beneficiaries if "the court concludes the modification is not inconsistent with a material purpose of the trust."  But the

---

[9] Korman's counsel stated Mann was physically unavailable to testify.

District of Columbia did not enact the Uniform Trust Code, D.C. Code § 19-1304.01 *et. seq.*, until 2004.

In any event, to the extent it was necessary in 1991 to determine whether the modification was not inconsistent with a material purpose of the Trust, that was a matter for the Superior Court, not this Court. If it were a matter for this Court, this Court would conclude that the material purpose of the Trust was to provide income to the named beneficiaries for life, and then to distribute out the Trust assets to John A. Korman's grandchildren. The continuation of the Trust after Helen Sepler's death to allow for the orderly resolution of the Ground Lease, which the Court views as a convenience for the benefit of the beneficiaries, was not inconsistent with the material purpose of the Trust.

*The Underwriters' Requirement.*

Finally, the Bank and Chapter 7 Trustee point to stipulated evidence that the underwriters of the title insurance that was issued upon the sale of the Ground Lease disputed whether the 1991 Order extended the terms of the Trust, and required all beneficiaries of the Trust to execute deeds quitclaiming their interest in the Ground Lease. No party presented any cogent argument as to why the Court should give weight to the purported opinion of unknown underwriters who did not testify or participate in this proceeding. In any event, underwriters are in the business of assessing – and mitigating – risk. It is of little, if any, probative value that they required the beneficiaries to quitclaim whatever interest they had in the Ground Lease in order to eliminate *any* risk of a later determination that the modification did not extend the term of the Trust. The standard by which the Court must weigh the evidence is the preponderance of the evidence – *i.e.*, more probable than not – while the underwriters undoubtedly sought 100% certainty in their assessment and reduction of risk.

21

*The Bank's Standing.*

Finally, Korman contends that the Bank lacks standing to challenge the Trustee's contention that the term of the Trust was extended by the 1991 Order.  Ordinarily, of course, a challenge to a party's standing would be resolved first, because standing implicates a court's jurisdiction to hear a case.  *See Bishop v. Bartlett*, 575 F.3d 419, 423 (4th Cir. 2009) (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 278 (1977); *Dan River, Inc. v. Unitex Ltd.,* 624 F.2d 1216, 1223 (4th Cir. 1980)).  However, this issue was raised in post-hearing briefs after the Bank fully participated at the evidentiary hearing.  And its significance has been substantially diminished because the Chapter 7 Trustee, originally named as a defendant, now joins in the petition for relief.  Korman concedes the Chapter 7 Trustee has standing to raise the issues addressed herein.

With respect to the Bank, Korman relies of D.C. Code § 19-1305.01, which provides:

> To the extent a beneficiary's interest is not protected by a spendthrift provision, the court may authorize a creditor or assignee of the beneficiary to reach the beneficiary's interest by attachment of present or future distributions to or for the benefit of the beneficiary or other means. The court may limit the award to such relief as is appropriate under the circumstances. <u>Whether or not a trust contains a spendthrift provision, the creditor of a beneficiary cannot exercise or compel the exercise of the beneficiary's right to commerce, approve, or disapprove a proposed trust termination or modification under sections 19–1304.11 through 19–1304.16, or trust combination or division under section 19–1304.17.</u>

D.C. Code § 19-1305.01 (2012) (emphasis added).

The parties have cited to no case that addresses this provision and the Court has not found any.  By its terms, a creditor of a beneficiary "cannot . . . compel the exercise of a beneficiary's right to . . . approve or disapprove a proposed trust . . . modification . . ."   Under the literal language of the provision, it would not apply since the modification purporting to extend the

term of the Trust has been adopted, and is not "proposed." Indeed, the Bank and Chapter 7 Trustee do not dispute that the Trust was amended by the 1991 Order and that the amendment became effective. Rather, they challenge the meaning of the amendment, arguing that it does not extend the term of the Trust, as the Trustees and Korman claim.

The Court need not resolve the standing of the Bank at this time. This Memorandum resolves the complaint in its entirety. As stated above, the Bank had fully participated in the hearings on this matter by the time its standing was challenged, and Korman concedes the Chapter 7 Trustee has standing to go forward with the claims. With standing conceded to the Chapter 7 Trustee, even if the Court were to deny standing to the Bank under D.C. Code § 19-1305.01, the more pertinent inquiry might well turn to whether the Bank should be allowed to intervene. *See* Fed. R. Civ. P. 24.

*Timing of Release of Injunction.*

Korman did not disclose his interest in the Trust in his schedules. Had he done so, the Chapter 7 Trustee and the Bank could have investigated the nature of the interest and brought this action early in the bankruptcy case to resolve the matter in an orderly manner, as the bankruptcy process is designed to do. Instead, the matter is now time-sensitive, and this Court's ruling will result in the preliminary injunction order being dissolved and the Trust distribution being made to Korman, potentially putting it outside the reach of the Chapter 7 Trustee and the Bank. Accordingly, the Court will enter an order that dissolves the preliminary injunction order, provided, however, that the order will be stayed until the expiration of fourteen days after the entry of the order to give the parties an opportunity to take any action they deem appropriate in response to this Memorandum and the accompanying order.

*Conclusion*

For the foregoing reasons, the Court will dissolve the preliminary injunction order

and dismiss the complaint.

cc:    James M. Hoffman
       Offit Kurman, P.A.
       4800 Montgomery Lane
       9th Floor
       Bethesda, MD 20814

       Marla L. Howell
       14406 Old Mill Rr.
       No 201
       Upper Marlboro, MD 20772

       Thomas F. DeCaro, Jr.
       14406 Old Mill Road
       Ste. 201
       Upper Marlboro, MD 20772

       Roger Schlossberg
       134 West Washington Street
       P.O. Box 4227
       Hagerstown, MD 21741-4227

       Jeremy D Rachlin
       7735 Old Georgetown Road
       Suite 1100
       Bethesda, MD 20814


**END OF MEMORANDUM**